MICHAEL C. ORMSBY
United States Attorney
Eastern District of Washington
TYLER H.L. TORNABENE
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone:  (509) 353-2767

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>Plaintiff, )<br><br>vs. )<br><br>AMY HAY, PATRICIA HALL, and MICHAEL STONE, )<br><br>Defendants. ) | **No.** CV-11-5154-LRS<br><br>**COMPLAINT FOR VIOLATIONS OF THE ANTI-KICKBACK ACT AND THE FALSE CLAIMS ACT**<br><br>**JURY TRIAL DEMANDED** |

The United States of America, by and through Michael C. Ormsby, United States

Attorney for the Eastern District of Washington, and Assistant United States Attorney

Tyler H.L. Tornabene, hereby alleges, avers, and claims against the above named

Defendants as follows:

## I.      INTRODUCTION

1.1     The UNITED STATES OF AMERICA (herein the UNITED STATES)

alleges, as detailed below, that Amy Hay, Patricia Hall, and Michael Stone (herein

collectively "the Defendants" where appropriate), formerly employees of Fluor Hanford,

UNITED STATES' COMPLAINT FOR VIOLATIONS OF THE ANTI-KICKBACK ACT AND THE FALSE
CLAIMS ACT- JURY TRIAL DEMANDED - Page 1

Inc., (herein "Fluor"), a United States Department of Energy prime contractor, engaged in, directly and indirectly, a kickback scheme primarily executed by the Defendants and Shane Fast, owner of Fast Pipe and Supply Company, Inc., (herein "Fast Pipe"), a subcontractor of Fluor.  Specifically, as detailed below, the Defendants knowingly accepted, collectively, thousands of dollars worth of kickbacks from Shane Fast, which he provided to obtain and/or reward the Defendants for providing, collectively, nearly $1.5 million dollars of government money to Fast Pipe in the form of supply purchases from Fast Pipe.  This kickback scheme is referred to herein as "the Fast Pipe Kickback Scheme."  The Fast Pipe Kickback Scheme violated the federal Anti-Kickback Act, 41 U.S.C. § 51 *et seq.*, and resulted in knowing submissions of false or fraudulent claims to the United States Department of Energy, in violation of the federal False Claims Act, 31 U.S.C. §§ 3729-33.

1.2     By participating in the Fast Pipe Kickback Scheme the Defendants violated both the federal Anti-Kickback Act, 41 U.S.C. § 51 *et seq*., and the federal False Claims Act, 31 U.S.C. §§ 3729-33.

## II.     JURISDICTION & VENUE

2.1     The UNITED STATES re-alleges and incorporates by reference paragraphs 1.1 and 1.2 of this Complaint.

2.2     This civil action seeks the recovery of damages, civil penalties and disgorgement of monies obtained by the Defendants as a result of violations of the

federal Anti-Kickback Act, 41 U.S.C. § 51 *et seq.*, and the federal False Claims Act, 31 U.S.C. §§ 3729-33, and for other violations of the common law that support causes of action for unjust enrichment and/or other legal and equitable remedies that are available to this Court.

2.3    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1345 and 31 U.S.C. § 3732(a).

2.4    Venue is proper in this district under 28 U.S.C. §§ 1391(b), (c), and 31 U.S.C. § 3732(a).  At all times material hereto, it is believed that the Defendants were located in and transacted business in the Eastern District of Washington.

### III.    PARTIES

3.1    The UNITED STATES re-alleges and incorporates by reference paragraphs 1.1 through 2.4 of this Complaint.

3.2    The Plaintiff is the UNITED STATES, which brings this action on behalf of the principal government agency victimized by the Defendants' conduct, the United States Department of Energy (herein "DOE").

3.3    AMY HAY (herein "Defendant Hay") is believed to reside in or near Kennewick, Washington, in the Eastern District of Washington.  At times relevant to this Complaint, Defendant Hay was an employee or agent of Fluor in the Eastern District of Washington.

3.4    PATRICIA HALL (herein "Defendant Hall") is believed to reside in or near West Richland, Washington, in the Eastern District of Washington.  At times relevant to this Complaint, Defendant Hall was an employee or agent of Fluor in the Eastern District of Washington.

3.5    MICHAEL STONE (herein "Defendant Stone") is believed to reside in or near Kennewick, Washington, in the Eastern District of Washington.  At times relevant to this Complaint, Defendant Stone was an employee or agent of Fluor in the Eastern District of Washington.

## IV.    FACTS

4.1    The UNITED STATES re-alleges and incorporates by reference paragraphs 1.1 through 3.5 of this Complaint.

4.2    At times relevant, Fluor had a prime contract with DOE at the Hanford Nuclear Reservation in the Eastern District of Washington (herein "the prime contract").

4.3    The prime contract required that Fluor hire Material Coordinators to make purchases using government reimbursed purchase cards (herein "P-Cards").  At times relevant the Defendants were employed as Material Coordinators on behalf of Fluor and were issued P-Cards for use in their employment.

4.4    At times relevant the Defendants, in their respective capacities as Material Coordinators for Fluor, made or facilitated purchases and sales with their respective P-Cards related to providing materials to Fluor for use in the prime contract.

4.5     A P-Card is a Visa credit card, issued by JP Morgan Chase Bank which is used to purchase materials for certain prime contractors with DOE.  Those DOE prime contractors pay their respective P-Card bills electronically on a monthly basis.

4.6     At all times relevant, Fluor maintained its own accounts with JP Morgan Chase Bank.  Fluor paid its Material Coordinators' P-Card bills monthly utilizing a DOE funded line of credit.

4.7     Fluor was required to provide DOE with true and accurate monthly cost reports, for DOE's approval, showing its total P-Card draw downs of its DOE funded line of credit.

4.8     In this manner, DOE ultimately paid the P-Card balances of Fluor, including those portions of the P-Card balances consisting of purchases made by the Defendants.

4.9     Fluor was required by its prime contract with DOE, as well as governing statutes, rules, and regulations to purchase supplies via the P-Card system at the best price (fair market value) for the government.

4.10    Fluor was required by its prime contract with DOE, as well as governing statutes, rules, and regulations to make purchases for the government that were not the product of any kickback or fraud scheme.

4.11    In making purchases and sales related to providing materials to Fluor for use in the prime contract, the Defendants and other Fluor agents and employees, were prohibited by federal law from engaging in or facilitating any kickback or fraud scheme.

## THE FAST PIPE KICKBACK SCHEME

4.12    The UNITED STATES re-alleges and incorporates by reference paragraphs 1.1 through 4.11 of this Complaint.

4.13    Fast Pipe was owned and operated by Shane Fast during times relevant to this Complaint.

4.14    Fast Pipe sold materials, primarily as a middle man, to Fluor, among other DOE prime contractors, via Fluor's Material Coordinators using their P-Cards.

4.15    Between October of 2005 and October of 2008, the Defendants were employed by Fluor as Material Coordinators.

4.16    Between October of 2005 and October of 2008, Fast Pipe, Shane Fast, other agents of Fast Pipe, the Defendants, and other Fluor Material Coordinators, engaged in a scheme whereby Fast Pipe and Shane Fast gave tens of thousands of dollars worth of items to the Defendants and other Fluor Material Coordinators in the form of, among other things, tickets to attend Seattle Seahawk football games, Seattle Mariners baseball games, and gift cards to various merchants.

4.17    Shane Fast would provide the kickbacks to the Fluor Material Coordinators, including the Defendants, through a variety of means including sending them in

unmarked packages to the recipients' home addresses via mail, providing them in packages labeled only "Santa," as well as personally providing them directly to the Fluor Material Coordinators.

4.18   In this manner, between October of 2005 and October of 2008, Shane Fast and Fast Pipe provided at least $40,000 in kickbacks spread between various Fluor Material Coordinators, including the Defendants.  During that same time period Fast Pipe received a total of over $3.9 million in P-Card purchases from the Fluor Material Coordinators, including the Defendants, who received kickbacks from Fast Pipe and Shane Fast.

4.19   The Defendants, along with all Material Coordinators employed by Fluor, received a Business Ethics Memorandum (herein "Ethics Memo") prohibiting employees from taking gratuities or kickbacks from suppliers or subcontractors.

4.20   The Ethics Memo provided "[e]mployees will neither provide consideration (i.e., gifts, services, or money) to anyone, nor accept anything of more than nominal value from anyone with whom the Company does business (e.g., suppliers, contractors, clients, customers)."

4.21   The Ethics Memo defined "Nominal" to mean, among other things:  ". . . low dollar value (less than $25). . . ."

4.22   Each of the items of value given by Fast Pipe and Shane Fast to the Defendants and other Fluor Material Coordinators exceeded $25.00 in value.

UNITED STATES' COMPLAINT FOR VIOLATIONS OF THE ANTI-KICKBACK ACT AND THE FALSE CLAIMS ACT- JURY TRIAL DEMANDED - Page 7

4.23   Each of the items of value given by Fast Pipe and Shane Fast to the Defendants and other Fluor Material Coordinators was for the purpose of improperly obtaining or rewarding favorable treatment in connection with the prime contract, specifically obtaining or rewarding P-Card purchases from Fast Pipe by the Defendants.

4.24   Between October of 2005 and October of 2008, the Defendants, based on the kickbacks given to them by Fast Pipe and Shane Fast, collectively purchased at least $1,456,423.55 worth of materials with their P-Cards from Fast Pipe.

4.25   During the same time period, October of 2005 to October of 2008, the Defendants collectively accepted at least $2,890.05 worth of kickbacks provided by Shane Fast and Fast Pipe.

4.26   DOE ultimately paid for the entire amount of the Defendants' unlawful purchases from Shane Fast and Fast Pipe.

4.27   In this manner Fast Pipe, Shane Fast and the Defendants committed violations, including knowing violations, of the federal Anti-Kickback Act, 41 U.S.C. § 51 *et seq*.

4.28   Had DOE known of the Fast Pipe kickback scheme it would not have approved any portion of the associated monthly draw downs on the DOE funded line of credit by Fluor.

4.29   In this manner the Defendants also violated the federal False Claims Act, 31 U.S.C. §§ 3729-33.

## KICKBACKS AND FALSE CLAIMS BY AMY HAY

4.30   The UNITED STATES re-alleges and incorporates by reference paragraphs 1.1 through 4.29 of this Complaint.

4.31   Defendant Hay's job as a Material Coordinator for Fluor was to purchase materials for Fluor from various suppliers, upon request by employees or agents of Fluor for use in performing the prime contract.

4.32   As a Material Coordinator, Defendant Hay used a P-Card to buy materials for Fluor which were ultimately paid for by the UNITED STATES through DOE.

4.33   On information and belief, as a Material Coordinator Defendant Hay received the Ethics Memo prohibiting the acceptance of kickbacks or gratuities valued at over $25 and was otherwise aware that accepting kickbacks from suppliers or subcontractors was prohibited.

4.34   Nonetheless, at times relevant to this Complaint Defendant Hay accepted kickbacks from Fast Pipe and Shane Fast worth, collectively and individually, more than $25.

4.35   On information and belief, Defendant Hay's relationship with Shane Fast while she was accepting kickbacks was solely professional and primarily related to her employment as a Material Coordinator for Fluor.

4.36   Defendant Hay did not reimburse Shane Fast or Fast Pipe for any of the kickbacks she accepted during times relevant to this Complaint.

UNITED STATES' COMPLAINT FOR VIOLATIONS OF THE ANTI-KICKBACK ACT AND THE FALSE CLAIMS ACT- JURY TRIAL DEMANDED - Page 9

4.37   By way of example, in approximately November of 2006, Defendant Hay accepted at least one kickback with an approximate value of $705.30.  The kickback or kickbacks were categorized as "Advertising" in the Fast Pipe Quickbooks account maintained by Shane Fast (herein "Fast's Quickbooks") and attributed to "Amy @ Fluor."

4.38   By way of further example, in approximately December of 2006, Defendant Hay received a gift card to Macy's from Shane Fast and Fast Pipe with, on information and belief, an approximate value of at least $100.  The kickback was listed as an office expense in Fast's Quickbooks for $400 paid to "Macy's and attributed to "Amy/Alishia/Patty."

4.39   By way of further example, during 2007 Defendant Hay accepted at least four tickets, provided by Shane Fast and Fast Pipe, to Seattle Mariners Major League Baseball ("MLB") games on at least one occasion.

4.40   At times relevant to this Complaint two tickets to a Seattle Mariners MLB game had a value of at least $30.

4.41   By way of further example, during 2007 Defendant Hay accepted at least two tickets, provided by Shane Fast and Fast Pipe, to Seattle Seahawks NFL games on at least two occasions, for a total of at least four tickets, and at least one parking pass for a Seattle Seahawks NFL game.

4.42   At times relevant to this Complaint a ticket to a Seattle Seahawks NFL game had a value of at least $40 and a parking pass for a Seattle Seahawks NFL game had a value of at least $30.

4.43   By way of further example, in approximately December of 2007 or January of 2008, Defendant Hay received another gift card to Macy's from Shane Fast and Fast Pipe with an approximate value of $100.

4.44   By way of further example, in approximately January of 2008, Defendant Hay received at least one more kickback in the form of tickets to Seattle Seahawks NFL games.  The kickback or kickbacks were listed in Fast's Quickbooks as "seahawks tickets amy" and given a value of $1,004.75.

4.45   Between October of 2005 and October of 2008 Defendant Hay received a total of at least $2,130.05 worth of kickbacks from Shane Fast and Fast Pipe.

4.46   Between October of 2005 and October of 2008, Defendant Hay made purchases from Fast Pipe with her P-Card during every month for a total of 36 months and approximately at least 740 purchased items.

4.47   Pursuant to P-Card procedures, Defendant Hay submitted an invoice to Fluor at the end of every month totaling the purchases Defendant Hay made on the P-Card for approval from DOE, which resulted in 36 monthly invoices submitted by Hay reporting P-Card Purchases from Fast Pipe and Shane Fast.

4.48   The total dollar amount of the P-Card purchases Defendant Hay made from Fast Pipe and Shane Fast during the 36 months included in this Complaint, which included the time period when she knowingly accepted at least $2,130.05 worth of kickbacks from Shane Fast and Fast Pipe, totaled at least $391,395.40.

4.49   These fraudulent purchases were included in false claims knowingly made by Defendant Hay to Fluor and by Fluor to DOE, and in false records and statements knowingly made and used by Defendant Hay, and Fluor, material to the payment of such claims.

4.50   Defendant Hay, through her submission of her monthly P-Card invoices, among other means, knowingly caused the submission of these false claims to DOE and the making and using of false statements to DOE material to the payment of such claims.

4.51   Had DOE known that any portion of Defendant Hay's purchases from Fast Pipe and Shane Fast were the product of the Fast Pipe Kickback Scheme it would not have approved any portion of the associated monthly draw downs on the DOE funded line of credit by Fluor.

### KICKBACKS AND FALSE CLAIMS BY PATRICIA HALL

4.52   The UNITED STATES re-alleges and incorporates by reference paragraphs 1.1 through 4.51 of this Complaint.

4.53   Defendant Hall's job as a Material Coordinator for Fluor was to purchase materials for Fluor from various suppliers, upon request by employees or agents of Fluor for use in performing the prime contract.

4.54   As a Material Coordinator Defendant Hall used a P-Card to buy materials for Fluor which were ultimately paid for by the UNITED STATES through DOE.

4.55   On information and belief, as a Material Coordinator Defendant Hall received the Ethics Memo prohibiting the acceptance of kickbacks or gratuities valued at over $25 and was otherwise aware that accepting kickbacks from suppliers or subcontractors was prohibited.

4.56   Nonetheless, at times relevant to this Complaint Defendant Hall accepted kickbacks from Fast Pipe and Shane Fast worth, collectively and individually, more than $25.

4.57   On information and belief, Defendant Hall's relationship with Shane Fast while she was accepting kickbacks was solely professional and primarily related to her employment as a Material Coordinator for Fluor.

4.58   Defendant Hall did not reimburse Shane Fast or Fast Pipe for any of the kickbacks she accepted during times relevant to this Complaint.

4.59   By way of example, in approximately December of 2006, Defendant Hall received a gift card to Macy's from Shane Fast and Fast Pipe with, on information and belief, a value of approximately at least $100.  The kickback was listed as an office

expense in Fast's Quickbooks for $400 paid to Macy's and attributed to "Amy/Alishia/Patty."

4.60   By way of further example, during 2007 Defendant Hall accepted at least two tickets, provided by Shane Fast and Fast Pipe, to Seattle Seahawks National Football League ("NFL") games on at least two separate occasions, for a total of at least four tickets, and at least one parking pass.

4.61   At times relevant to this Complaint a ticket to a Seattle Seahawks NFL game had a value of at least $40 and a parking pass for a Seattle Seahawks NFL game had a value of at least $30.

4.62   By way of further example, in approximately December of 2007 or January of 2008, Defendant Hall received another gift card to Macy's from Shane Fast and Fast Pipe with an approximate value of $100.

4.63   Between October of 2005 and October of 2008 Defendant Hall received a total of at least $390 worth of kickbacks from Shane Fast and Fast Pipe.

4.64   Between October of 2005 and October of 2008, Defendant Hall made purchases from Fast Pipe with her P-Card during every month for a total of 36 months and at least approximately 1,224 purchased items.

4.65   Pursuant to P-Card procedures, Defendant Hall submitted an invoice to Fluor at the end of every month totaling the purchases Defendant Hall made on the P-

Card for approval from DOE, which resulted in 36 monthly invoices submitted by Defendant Hall reporting P-Card Purchases from Fast Pipe and Shane Fast.

4.66   The total dollar amount of the P-Card purchases Defendant Hall made from Fast Pipe and Shane Fast during the 36 months included in this Complaint, which included the time period when she knowingly accepted at least $390.00 worth of kickbacks from Shane Fast and Fast Pipe, totaled at least $642,495.75.

4.67   These fraudulent purchases were knowingly included in false claims made by Defendant Hall to Fluor and by Fluor to DOE, and in false records and statements knowingly made and used by Defendant Hall, and Fluor, material to the payment of such claims.

4.68   Defendant Hall, through her submission of her monthly P-Card invoices, among other means, knowingly caused the submission of these false claims to DOE and the making and using of false statements to DOE material to the payment of such claims.

4.69   Had DOE known that any portion of Defendant Hall's purchases from Fast Pipe and Shane Fast were the product of the Fast Pipe Kickback Scheme it would not have approved any portion of the associated monthly draw downs on the DOE funded line of credit by Fluor.

## KICKBACKS AND FALSE CLAIMS BY MICHAEL STONE

4.70   The UNITED STATES re-alleges and incorporates by reference paragraphs 1.1 through 4.69 of this Complaint.

4.71    Defendant Stone's job as a Material Coordinator for Fluor was to purchase materials for Fluor from various suppliers, upon request by employees or agents of Fluor for use in performing the prime contract.

4.72    As a Material Coordinator Defendant Stone used a P-Card to buy materials for Fluor which were ultimately paid for by the UNITED STATES through DOE.

4.73    On information and belief, as a Material Coordinator Defendant Stone received the Ethics Memo prohibiting the acceptance of kickbacks or gratuities valued at over $25 and was otherwise aware that accepting kickbacks from suppliers or subcontractors was prohibited.

4.74    Nonetheless, at times relevant to this Complaint Defendant Stone accepted kickbacks from Fast Pipe and Shane Fast worth, collectively and individually, more than $25.

4.75    On information and belief, Defendant Stone's relationship with Shane Fast while he was accepting kickbacks was solely professional and primarily related to his employment as a Material Coordinator for Fluor.

4.76    Defendant Stone did not reimburse Shane Fast or Fast Pipe for any of the kickbacks he accepted and kept during times relevant to this Complaint.

4.77    By way of example, in approximately August of 2005, Defendant Stone accepted at least two tickets, provided by Shane Fast and Fast Pipe, to Seattle Seahawks NFL games on at least one occasion.

4.78   At times relevant to this Complaint a ticket to a Seattle Seahawks NFL game had a value of at least $40.

4.79   By way of further example, in approximately May 2006 Defendant Stone accepted at least two tickets, provided by Shane Fast and Fast Pipe, to Seattle Mariners MLB games on at least one occasion.

4.80   At times relevant to this Complaint two tickets to a Seattle Mariners MLB game had a value of at least $30.

4.81   By way of further example, in approximately August of 2006, Defendant Stone accepted at least two tickets, provided by Shane Fast and Fast Pipe, to Seattle Seahawks NFL games on at least one occasion.

4.82   By way of further example, in approximately December 2006 or early 2007 Defendant Stone received a gift card to Outback Steakhouse from Shane Fast and Fast Pipe with, on information and belief, an approximate value of at least $100.  The kickback was listed as an office expense in Fast's Quickbooks for $500 paid to "Outback Steak House" and attributed to "Ned/Tony/MikeS./Pat."

4.83   By way of further example, in approximately August of 2007, Defendant Stone received at least two tickets, provided by Shane Fast and Fast Pipe, to Seattle Seahawks NFL games on at least one occasion.  On information and belief, Defendant Stone received the two tickets in the mail and gave them both to a local radio station.

4.84    Between October of 2005 and October of 2008 Defendant Stone received a total of at least $370 worth of kickbacks from Shane Fast and Fast Pipe.

4.85    Between October of 2005 and October of 2008, Defendant Stone made purchases from Fast Pipe with his P-Card during every month, except one, for a total of 35 months and approximately at least 314 purchased items.

4.86    Pursuant to P-Card procedures, Defendant Stone submitted an invoice to Fluor at the end of every month totaling the purchases Defendant Stone made on the P-Card for approval from DOE, which resulted in 35 monthly invoices submitted by Stone reporting P-Card Purchases from Fast Pipe and Shane Fast.

4.87    The total dollar amount of the P-Card purchases Defendant Stone made from Fast Pipe and Shane Fast during the 36 months included in this Complaint, which included the time period when he knowingly accepted at least $370 worth of kickbacks from Shane Fast and Fast Pipe, totaled at least $422,532.40.

4.88    These fraudulent purchases were included in false claims knowingly made by Defendant Stone to Fluor and by Fluor to DOE, and in false records and statements knowingly made and used by Defendant Stone, and Fluor, material to the payment of such claims.

4.89    Defendant Stone, through his submission of his monthly P-Card invoices, among other means, knowingly caused the submission of these false claims to DOE and the making and using of false statements to DOE material to the payment of such claims.

4.90   Had DOE known that any portion of Defendant Stone's purchases from Fast Pipe and Shane Fast were the product of the Fast Pipe Kickback Scheme it would not have approved any portion of the associated monthly draw downs on the DOE funded line of credit by Fluor.

## CLAIMS FOR RELIEF

## V.  ANTI-KICKBACK ACT VIOLATION- KICKBACKS RELATED TO THE FAST PIPE KICKBACK SCHEME

5.1   The UNITED STATES re-alleges paragraphs 1.1- 4.90 of this Complaint.

5.2   By virtue of the above described acts, the Defendants, pursuant to the Fast Pipe Kickback Scheme, knowingly solicited, accepted, or attempted to accept kickbacks in violation of 41 U.S.C. § 53(2) and 41 U.S.C. § 55.

5.3   By virtue of the above described acts, the Defendants, pursuant to the Fast Pipe Kickback Scheme, knowingly included, directly or indirectly, the amount of any kickback prohibited by 41 U.S.C. §53(1) or 41 U.S.C. §53(2), in the contract price charged by a subcontractor to a prime contractor or in the contract price charged by the prime contractor to DOE in violation of 41 U.S.C. § 53(3) and 41 U.S.C. § 55.

## ANTI-KICKBACK ACT LIABILITY OF DEFENDANT AMY HAY

5.4   The UNITED STATES re-alleges paragraphs 1.1- 5.3 of this Complaint.

5.5   By virtue of the above described acts, Defendant Hay is liable for a civil penalty or penalties for the entire amount of the kickbacks she solicited, accepted,

attempted to accept, or included, directly or indirectly, into the price charged by Fast Pipe to Fluor or by Fluor to the UNITED STATES, pursuant to the Fast Pipe Kickback Scheme, an amount of at least $2,130.05 the actual amount (exclusive of interest and costs) will be proven at the time of hearing and/or trial, pursuant to 41 U.S.C. § 55(a)(2).

5.6    By virtue of the above described acts Defendant Hay is liable for a civil penalty or penalties in the amount of twice the amount of the kickbacks she solicited accepted, attempted to accept, or included, directly or indirectly, into the price charged by Fast Pipe to Fluor or by Fluor to the UNITED STATES, pursuant to the Fast Pipe Kickback Scheme (a minimum of at least $4,260.10 exclusive of interests and cost, the actual amount to be proven at trial) and not more than $10,000 for each occurrence of prohibited conduct, pursuant to 41 U.S.C. §55(a)(1).

## ANTI-KICKBACK ACT LIABILITY OF DEFENDANT PATRICIA HALL

5.7    The UNITED STATES re-alleges paragraphs 1.1- 5.6 of this Complaint.

5.8    By virtue of the above described acts, Defendant Hall is liable for a civil penalty or penalties for the entire amount of the kickbacks she solicited, accepted, attempted to accept, or included, directly or indirectly, into the price charged by Fast Pipe to Fluor or by Fluor to the UNITED STATES, pursuant to the Fast Pipe Kickback Scheme, an amount of at least $390 the actual amount (exclusive of interest and costs) will be proven at the time of hearing and/or trial, pursuant to 41 U.S.C. § 55(a)(2).

5.9    By virtue of the above described acts Defendant Hall is liable for a civil

penalty or penalties in the amount of twice the amount of the kickbacks she solicited

accepted, attempted to accept, or included, directly or indirectly, into the price charged

by Fast Pipe to Fluor or by Fluor to the UNITED STATES, pursuant to the Fast Pipe

Kickback Scheme (a minimum of at least $780 exclusive of interests and cost, the actual

amount to be proven at trial) and not more than $10,000 for each occurrence of

prohibited conduct, pursuant to 41 U.S.C. §55(a)(1).

## ANTI-KICKBACK ACT LIABILITY OF DEFENDANT MICHAEL STONE

5.10    The UNITED STATES re-alleges paragraphs 1.1- 5.9 of this Complaint.

5.11    By virtue of the above described acts, Defendant Stone is liable for a civil

penalty or penalties for the entire amount of the kickbacks he solicited, accepted,

attempted to accept, or included, directly or indirectly, into the price charged by Fast

Pipe to Fluor or by Fluor to the UNITED STATES, pursuant to the Fast Pipe Kickback

Scheme, an amount of at least $370 the actual amount (exclusive of interest and costs)

will be proven at the time of hearing and/or trial, pursuant to 41 U.S.C. § 55(a)(2).

5.12    By virtue of the above described acts Defendant Stone is liable for a civil

penalty or penalties in the amount of twice the amount of the kickbacks he solicited

accepted, attempted to accept, or included, directly or indirectly, into the price charged

by Fast Pipe to Fluor or by Fluor to the UNITED STATES, pursuant to the Fast Pipe

Kickback Scheme (a minimum of at least $740 exclusive of interests and cost, the actual

amount to be proven at trial) and not more than $10,000 for each occurrence of prohibited conduct, pursuant to 41 U.S.C. §55(a)(1).

## VI.    FALSE CLAIMS ACT- FALSE CLAIMS RELATED TO THE FAST PIPE KICKBACK SCHEME

6.1    The United States re-alleges and incorporates by reference paragraphs 1.1 through 5.12 of this Complaint.

6.2    By virtue of the above described acts, from approximately October of 2005 to October of 2008, the Defendants, pursuant to the Fast Pipe Kickback Scheme, knowingly presented or caused others to present, to an officer, employee or agent of the United States, false or fraudulent claims and false records and statements to obtain payment or approval in violation of the federal False Claims Act, 31 U.S.C. §§ 3729-3733.

6.3    By virtue of the above described acts, the Defendants had actual knowledge that, as a result of the Fast Pipe Kickback Scheme, the information in Fluor's respective claims to DOE for re-imbursement or approval of P-Card purchases was false. Alternatively, the Defendants acted in deliberate ignorance of the truth or falsity of the P-Card claim information related to the Fast Pipe Kickback Scheme and/or acted in reckless disregard of the truth or falsity of those claims that were submitted to DOE and/or conspired with others to defraud the UNITED STATES by getting false or fraudulent claims allowed or paid.

6.4    The UNITED STATES paid the false or fraudulent claims due to the unlawful and false acts of the Defendants related to the Fast Pipe Kickback Scheme and, as a result, the UNITED STATES currently believes it has incurred actual damages in the amount of at least $1,456,423.55 the actual amount (exclusive of interest and costs) will be proven at the time of hearing and/or trial.

6.5    The Defendants committed these unlawful acts individually, jointly, and/or in conspiracy with other participants in the Fast Pipe Kickback Scheme.

### FALSE CLAIMS ACT LIABILITY OF DEFENDANT AMY HAY

6.6    The United States re-alleges and incorporates by reference paragraphs 1.1 through 6.5 of this Complaint.

6.7    Pursuant to the False Claims Act, including 31 U.S.C. § 3729, as adjusted by 28 CFR 85.3(a)(9), Defendant Hay is liable to the United States for the principal amount paid as a result of the false claims (at least $391,395.40), for a civil penalty of treble damages on the false claims (at least $1,174,186.62) and for an additional civil penalty of not less than $5,500 and not more than $11,000, for each of the false or fraudulent certifications or claims submitted or caused to be submitted by Defendant Hay.

### FALSE CLAIMS ACT LIABILITY OF DEFENDANT PATRICIA HALL

6.8    The United States re-alleges and incorporates by reference paragraphs 1.1 through 6.7 of this Complaint.

6.9    Pursuant to the False Claims Act, including 31 U.S.C. § 3729, as adjusted by 28 CFR 85.3(a)(9), Defendant Hall is liable to the United States for the principal amount paid as a result of the false claims (at least $642,495.75), for a civil penalty of treble damages on the false claims (at least $1,927,487.25) and for an additional civil penalty of not less than $5,500 and not more than $11,000, for each of the false or fraudulent certifications or claims submitted or caused to be submitted by Defendant Hall.

## FALSE CLAIMS ACT LIABILITY OF DEFENDANT MICHAEL STONE

6.10    The United States re-alleges and incorporates by reference paragraphs 1.1 through 6.9 of this Complaint.

6.11    Pursuant to the False Claims Act, including 31 U.S.C. § 3729, as adjusted by 28 CFR 85.3(a)(9), Defendant Stone is liable to the United States for the principal amount paid as a result of the false claims (at least $422,532.40), for a civil penalty of treble damages on the false claims (at least $1,267,597.20) and for an additional civil penalty of not less than $5,500 and not more than $11,000, for each of the false or fraudulent certifications or claims submitted or caused to be submitted by Defendant Stone.

## PRAYER FOR RELIEF

WHEREFORE, the UNITED STATES prays for judgment and the following relief against the Defendants:

UNITED STATES' COMPLAINT FOR VIOLATIONS OF THE ANTI-KICKBACK ACT AND THE FALSE CLAIMS ACT- JURY TRIAL DEMANDED - Page 24

<u>AS TO DEFENDANT AMY HAY</u>:

1.      Judgment against Defendant Hay for a civil penalty in the minimum amount of $2,130.05 (the minimum amount of the kickbacks included, directly or indirectly, in the price charged, solicited, attempted to accept, or accepted by Defendant Hay pursuant to the Fast Pipe Kickback Scheme), or for such amount that will be proven at hearing and/or time of trial, for his liability under 41 U.S.C. § 55(a)(2);

2.      Judgment against Defendant Hay for a civil penalty in the additional minimum amount of $4,260.10 (twice the amount of the kickbacks included, directly or indirectly, in the price charged, solicited, attempted to accept, or accepted by Defendant Hay pursuant to the Fast Pipe Kickback Scheme), plus an additional $10,000.00 for each occurrence of Defendant Hay's prohibited conduct pursuant to the Fast Pipe Kickback Scheme or for such amount that will be proven at hearing and/or time of trial, for his liability under 41 U.S.C. §55(a)(1);

3.      Judgment against Defendant Hay in the additional minimum amount of $391,395.40 for false claims to DOE related to the Fast Pipe Kickback Scheme, or for such amount that will be proven at hearing and/or time of trial, for her violation of the federal False Claims Act, 31 U.S.C. §§ 3729-3733;

4.      For treble damages against Defendant Hay in the additional minimum amount of $1,174,186.20 (three times the minimum amount of damages of $391,395.40 related to the Fast Pipe Kickback Scheme) or for such treble damages based on the

actual damages proven at hearing and/or trial, for her violation of the federal False Claims Act, 31 U.S.C. §§ 3729-3733;

5.      For an additional civil penalties of not less than $5,500 and not more than $11,000, for Defendant Hay's false or fraudulent certifications or claims submitted or caused to be submitted related to the Fast Pipe Kickback Scheme, pursuant to the federal False Claims Act, 31 U.S.C. §§ 3729-3733;

AS TO DEFENDANT PATRICIA HALL:

6.      Judgment against Defendant Hall for a civil penalty in the minimum amount of $390 (the minimum amount of the kickbacks included, directly or indirectly, in the price charged, solicited, attempted to accept, or accepted by Hall pursuant to the Fast Pipe Kickback Scheme), or for such amount that will be proven at hearing and/or time of trial, for his liability under 41 U.S.C. § 55(a)(2);

7.      Judgment against Defendant Hall for a civil penalty in the additional minimum amount of $780 (twice the amount of the kickbacks included, directly or indirectly, in the price charged, solicited, attempted to accept, or accepted by Defendant Hall pursuant to the Fast Pipe Kickback Scheme), plus an additional $10,000.00 for each occurrence of Defendant Hall's prohibited conduct pursuant to the Fast Pipe Kickback Scheme or for such amount that will be proven at hearing and/or time of trial, for his liability under 41 U.S.C. §55(a)(1);

8.    Judgment against Defendant Hall in the additional minimum amount of $642,495.75 for false claims to DOE related to the Fast Pipe Kickback Scheme, or for such amount that will be proven at hearing and/or time of trial, for her violation of the federal False Claims Act, 31 U.S.C. §§ 3729-3733;

9.    For treble damages against Defendant Hall in the additional minimum amount of $1,927,487.25 (three times the minimum amount of damages of  $642,495.75 related to the Fast Pipe Kickback Scheme) or for such treble damages based on the actual damages proven at hearing and/or trial, for her violation of the federal False Claims Act, 31 U.S.C. §§ 3729-3733;

10.    For additional civil penalties of not less than $5,500 and not more than $11,000, for Defendant Hall's false or fraudulent certifications or claims submitted or caused to be submitted related to the Fast Pipe Kickback Scheme, pursuant to the federal False Claims Act, 31 U.S.C. §§ 3729-3733;

AS TO DEFENDANT MICHAEL STONE:

11.    Judgment against Defendant Stone for a civil penalty in the minimum amount of $370 (the minimum amount of the kickbacks included, directly or indirectly, in the price charged, solicited, attempted to accept, or accepted by Defendant Stone pursuant to the Fast Pipe Kickback Scheme), or for such amount that will be proven at hearing and/or time of trial, for his liability under 41 U.S.C. § 55(a)(2);

12.    Judgment against Defendant Stone for a civil penalty in the additional minimum amount of $740 (twice the amount of the kickbacks included, directly or indirectly, in the price charged, solicited, attempted to accept, or accepted by Defendant Stone pursuant to the Fast Pipe Kickback Scheme), plus an additional $10,000.00 for each occurrence of Defendant Stone's prohibited conduct pursuant to the Fast Pipe Kickback Scheme or for such amount that will be proven at hearing and/or time of trial, for his liability under 41 U.S.C. §55(a)(1);

13.    Judgment against Defendant Stone in the additional minimum amount of $422,532.40 for false claims to DOE related to the Fast Pipe Kickback Scheme, or for such amount that will be proven at hearing and/or time of trial, for his violation of the federal False Claims Act, 31 U.S.C. §§ 3729-3733;

14.    For treble damages against Defendant Stone in the additional minimum amount of $1,267,597.20 (three times the minimum amount of damages of $422,532.40 related to the Fast Pipe Kickback Scheme) or for such treble damages based on the actual damages proven at hearing and/or trial, for his violation of the federal False Claims Act, 31 U.S.C. §§ 3729-3733;

15.    For an additional civil penalties of not less than $5,500 and not more than $11,000, for Defendant Stone's false or fraudulent certifications or claims submitted or caused to be submitted related to the Fast Pipe Kickback;

//

1  AS TO ALL DEFENDANTS:

2       16.    For pre and post-judgment interest on all damages;

3       17.    For the UNITED STATES' investigation costs and fees, as well as the

4

5  UNITED STATES' reasonable attorney's fees and other costs as allowed or otherwise

6  recoverable under the court rules and/or any other applicable federal statute, code, or

7  regulation; and for

8

9       18.    Such other and further legal and for equitable relief that the Court deems

10  just and equitable in the case.

11       RESPECTFULLY SUBMITTED this 31st day of October, 2011.

12

13                    MICHAEL C. ORMSBY
                   U.S. Attorney Eastern District Of Washington

14

15                     *s/Tyler H.L. Tornabene*
                   TYLER H.L. TORNABENE,

16                     Assistant United States Attorney

17                     United States Attorney's Office
                   P.O. Box 1494

18                     Spokane, WA  99210-1494

19                     Phone:  509-353-2767
                   Fax:  509-353-2766

20                     USA-WAE-Ttornabene@usdoj.gov

21

22

23

24

25

26

27